CITY OF CINCINNATI, APPELLANT, *v.* FLAHERTY ET AL.,
APPELLEES.

CITY OF CINCINNATI, APPELLANT, *v.* BERMAN ET AL.,
APPELLEES.

CITY OF CINCINNATI, APPELLANT, *v.* LENNON ET AL.,
APPELLEES.

(Nos. 6233, 6232 and 6234—Decided March 8, 1943.)

*Mr. John D. Ellis,* city solicitor, and *Mr. Robert J. Paul,* for appellant.
*Mr. Vincent Mercurio,* for appellee, L. H. Pegg.
*Mr. Alfred D. Meitus,* for appellee, A. Salman.

MATTHEWS, J. These cases started in criminal prosecutions, for violating a municipal ordinance (Section 179-6) making it unlawful to exhibit or main-

tain a pinball machine on premises within 300 feet of any elementary or high school. The defendants were found guilty at trials at which the pinball machines were introduced in evidence.

After the trial L. H. Pegg without prior leave of court filed a "petition of interpleader" in the case in which John Flaherty had been convicted, alleging that he had leased or loaned the pinball machines to Flaherty, that he owned the machines, that he had not known the machines were to be exhibited or maintained in an unlawful location, that the machines had not been taken from defendant under any process or order of court, and that defendant did not claim title, and Pegg prayed for the recovery of the machines.

In the other two cases A. Salman filed a "petition of intervening third party," in which the additional allegations were made that the court had not rendered any judgment based on the purpose for which the machines were being used by the defendant and that the machines had been taken from the defendant by Eugene Weatherly, chief of police, and were still being held by him, and he asked for an order directing Eugene Weatherly, chief of police, to deliver the machines to him.

In the bill of exceptions in each of the three cases it appears that the petitioner's testimony supported the allegations of his pleading. There was no evidence offered as to who had possession of the machines at that time.

The order appealed from in the *Flaherty case* starts with a finding in accordance with the allegation of the pleading, including a finding that the machines had been introduced in evidence, and ends by ordering the delivery of the machines to Pegg, the petitioner, and discharging plaintiff from any and all liability to either the defendant or Pegg.

In the other two cases, the court, among other things, found that the machines had been taken from the defendant on the order of C. O. Sherrill, city manager, and Eugene T. Weatherly, chief of police, and that they were still in the custody and control "of those officials, that the machines had been introduced in evidence at the trial on the criminal charge, that the petitioner was the owner" and then ordered that "the city of Cincinnati, C. O. Sherrill, its city manager, Eugene T. Weatherly, its chief of police, return forthwith the machines to the petitioner."

There is no doubt that a court, having jurisdiction to hear and decide issues of fact, has as a part of that jurisdiction the power and authority to control and dispose of tangible property introduced in evidence and thereby placed in its custody for the purposes of the action. This was true of evidential exhibits at common law. Courts have jurisdiction over their files at all times. 11 Ohio Jurisprudence, 645. This is true in Ohio. *State* v. *Jacobs,* 137 Ohio St., 363, 30 N. E. (2d), 432.

And if such exhibits are contraband, the court has the authority and is under the duty to direct their retention or destruction. Section 13430-8, General Code.

In Section 13430-1, General Code, are listed many articles that are declared contraband, but it is expressly provided that the enumeration should not "in any wise affect or modify other provisions of law for search and seizure of other articles," so that if, by any law, the destruction of an article possessed or used in violation of law is authorized, the fact that it is not specifically enumerated in Section 13430-1, General Code, does not prevent its destruction as authorized by any valid statute or ordinance. And as it is expressly provided by Section 179-13 of the Code of Ordinances

of the city of Cincinnati that if a pinball machine is operated contrary to any provision of the ordinances relating to them "such machine may, in the discrétion of the city manager, be seized and destroyed, as in the case of gaming devices," it is clear that these machines became contraband and subject to destruction upon the conviction of their custodians of operating them within 300 feet of school premises. The ordinance purports to clothe the city manager with this authority without the intervention of any judicial process. Such administrative process has been declared to be "due process" as guaranteed by both state and federal Constitutions. *State* v. *French,* 71 Ohio St., 186, 73 N. E., 216; *League* v. *City of Cincinnati,* 64 Ohio App., 195, 28 N. E. (2d), 660; *Lawton* v. *Steele,* 152 U. S., 133, 38 L. Ed., 385, 14 S. Ct., 499.

The city manager and the chief of police, as well as the entire police department, acting under the directions of the city manager are justified in seizing all pinball machines that are being operated contrary to law and in destroying them—and this power exists even in the absence of any prosecution of the operators for so using the machines. Now does the fact that the operators were prosecuted and convicted and the machines introduced in evidence suspend or qualify that power or give to the Municipal Court the power to direct and control the discretion of the city manager in that respect, and, if so, to what extent? If there is any such limiting effect it must result either from the control of the court over the *res* or over the custodian.

In 21 Corpus Juris Secundum, 215, it is said:

"As a general rule the conduct of the court's ministerial officers and others connected with its judicial proceedings is always subject to the control and discipline of the court. Thus the court may give summary relief against its officers, as, for example, by requiring

them to return money, books, papers, or other property to a person from whom it was unlawfully taken, or which the officers have no equitable right to retain."

By Section 1558-35, General Code, it is provided that:

"Every police officer of the city of Cincinnati shall be ex officio a deputy bailiff of the Municipal Court and shall perform from time to time such duties in respect to cases within the jurisdiction of said court as may be required of them by said court or any judge thereof."

This provision does not confer upon the Municipal Court general supervisory power over the police department, but it does make the members thereof officers of the court in respect to cases before it and gives to the court jurisdiction to control and direct them when they act in that capacity. There is, therefore, no doubt that the court had jurisdiction to direct the police officer or officers having custody of these machines as exhibits in the cases. Its jurisdiction was limited to that and did not extend to control over their conduct in other relations as to those machines or any other matter.

The duty of the police officers as to the custody of the machines as exhibits was derived from their relation to the court and the court's control over them was for the sole purpose of use as evidence. Beyond that the court itself had no power and could confer none. But the city manager and the police officers had other authority and other power derived not from the court, but from the law and ordinances of the city. One power derived from ordinance and not from the court was that to destroy the machines that had been unlawfully used. Jurisdiction over the criminal cases gave to the court no power to control the action of the city manager and chief of police in their exercise of that power.

This power has no relation to the issues or the relief or the punishment involved in the criminal prosecution.

In 37 American Jurisprudence, 886, it is said:

"In accordance with the general rules governing judicial control over the acts of public officers, the judgment of municipal officers in the execution of powers conferred on them by law or charter is not subject to control and correction by the courts in the absence of fraud or a clear abuse of discretion."

If the court could not control the discretion of the city manager as to the destruction of these machines in an action filed for that specific purpose, by stronger reasons it could not do so in the exercise of incidental or implied power when its jurisdiction had been invoked for an entirely different purpose.

And as the court could not control this discretion of the city manager, derived from the ordinance, to again seize and destroy these machines, to require the return of the machines as exhibits, ordering their return, would result in the doing of a vain thing. The conviction of the defendants in these actions conclusively proves the contraband character of the machines and furnishes the basis for their destruction.

It results from what we have said, that it is our opinion that the court lacked jurisdiction in these cases to order the return of these machines and should have sustained the plaintiffs' motions challenging its jurisdiction.

For these reasons, the judgments in these cases are reversed and the causes remanded with instructions to dismiss the applications for the return of the machines.

*Judgments reversed and causes remanded.*

Ross, P. J., concurs.